Robert Drexler (SBN 119119)
Robert.Drexler@CapstoneLawyers.com
Jonathan Lee (SBN 267146)
Jonathan.Lee@CapstoneLawyers.com
Robert Myong (SBN 262097)
Robert.Myong@CapstoneLawyers.com
Capstone Law APC
1875 Century Park East, Suite 1860
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Attorneys for Plaintiff Augustine Bautista

D.LAW, INC.
Emil Davtyan (SBN 299363)
emil@d.law
David Yeremian (SBN 226337)
d.yeremian@d.law
David Keledjian (SBN 309135)
d.keledjian@d.law
Elizabeth Harrier (SBN 315990)
e.harrier@d.law
450 N. Brand Blvd., Suite 840
Glendale, California 91203
Telephone: (818) 962-6465
Facsimile: (818) 962-6469

Attorneys for Plaintiff Robert E. Dickie

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AUGUSTINE BAUTISTA and ROBERT E. DICKIE, on behalf of themselves and on behalf of other members of the general public similarly situated,

Plaintiffs,

vs.

UPS SUPPLY CHAIN SOLUTIONS, INC., a Delaware corporation; UPS SUPPLY CHAIN SOLUTIONS GENERAL SERVICES, INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No.: 5:25-cv-00852-SSS-DTB

Honorable Sunshine S. Sykes

**CONSOLIDATED CLASS ACTION COMPLAINT**

(1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime);
(2) Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (Unpaid Minimum Wages);
(3) Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 (Failure to Provide Meal Periods);
(4) Violation of California Labor Code §§ 226.7, 516, and 1198 (Failure to Authorize and Permit Rest Periods);
(5) Violation of California Labor Code §§ 201

and 202 (Wages Not Timely Paid Upon Termination);
(6) Violation of California Labor Code § 2802 (Unreimbursed Business Expenses);
(7) Violation of California Business & Professions Code §§ 17200, *et seq.* (Unlawful Business Practices); and
(8) Violation of California Business & Professions Code §§ 17200, *et seq.* (Unfair Business Practices)
(9) Violation of California Labor Code § 226(a) (Failure to Provide Accurate Written Wage Statements)
(10) Civil Penalties (Lab. Code § 2698, *et seq.*)

**Jury Trial Demanded**

Complaint Filed: March 4, 2025

Plaintiffs Augustine Bautista and Robert E. Dickie, on behalf of themselves and on behalf of all other members of the public similarly situated, allege as follows:

**JURISDICTION AND VENUE**

1. On March 4, 2025, Plaintiff Bautista filed a Class Action Complaint in the Superior Court of the State of California for the County of Riverside.

2. On March 5, 2025, Plaintiff Dickie filed a Class Action Complaint in the Superior Court of the State of California for the County of San Bernardino.

3. On April 7, 2025, Defendants filed a Notice of Removal in the *Baustista* case under the Class Action Fairness Act of 2005 pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453.

4. On May 5, 2025, Defendants filed a Notice of Removal in the *Dickie* case under the Class Action Fairness Act of 2005 pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453.

5. On October 22, 2025, the Court consolidated the *Baustista* and *Dickie* cases.

6. Venue is proper in this Court, because these cases were originally filed in the Superior Court of California for the County of Riverside and County of San Bernardino. Venue properly lies in the Unites States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(a), 1391(b), and 1441(a).

**THE PARTIES**

7. Plaintiff Bautista is a resident of Adelanto, California. Defendants employed Plaintiff as an hourly paid, non-exempt employee from approximately 2015 to November 2023. Plaintiff worked for Defendants as a Distribution Specialist at their facility in Mira Loma, California. During his employment, Plaintiff typically worked eight (8) or more hours per day and five (5) days per week. Plaintiffs' primary job duties included, without limitation, stocking and staffing the warehouse, training employees, drafting operating procedures, optimizing the warehouse, ensuring picking accuracy, coordinating deliveries, ensuring proper container inspections, filing theft or injury reports, and estimating labor costs for clients.

8. Plaintiff Dickie is, and at all relevant times mentioned herein, an individual

residing in the State 0f California.

9. UPS SUPPLY CHAIN SOLUTIONS, INC. was and is, upon information and belief, a Delaware corporation, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county and the State of California.

10. UPS SUPPLY CHAIN SOLUTIONS GENERAL SERVICES, INC. was and is, upon information and belief, a Delaware corporation, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county and the State of California.

11. Plaintiffs are unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, but will seek leave of this Court to amend the complaint and serve such fictitiously named Defendants once their names and capacities become known.

12. Plaintiffs are informed and believe, and thereon allege, that DOES 1 through 10 were the partners, agents, owners, or managers of Defendants at all relevant times.

13. Plaintiffs are informed and believe, and thereon allege, that each and all of the acts and omissions alleged herein was performed by, or is attributable to, UPS SUPPLY CHAIN SOLUTIONS, INC.; UPS SUPPLY CHAIN SOLUTIONS GENERAL SERVICES, INC.; and/or DOES 1 through 10 (collectively, “Defendants” or “UPSSCS”), each acting as the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others’ behalf. The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

14. At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein. At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

15. Plaintiffs are informed and believe, and thereon allege, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts,

omissions, occurrences, and transactions alleged herein.

16. Under California law, Defendants are jointly and severally liable as employers for the violations alleged herein because they have each exercised sufficient control over the wages, hours, working conditions, and employment status of Plaintiffs and class members. Each Defendant had the power to hire and fire Plaintiffs and class members, supervised and controlled their work schedule and/or conditions of employment, determined their rate of pay, and maintained their employment records. Defendants suffered or permitted Plaintiffs and class members to work and/or "engaged" Plaintiffs and class members so as to create a common-law employment relationship. As joint employers of Plaintiffs and class members, Defendants are jointly and severally liable for the civil penalties and all other relief available to Plaintiffs and class members under the law.

17. Plaintiffs are informed and believe, and thereon allege, that at all relevant times, Defendants, and each of them, have acted as joint employers with respect to Plaintiffs and class members because Defendants have:

(a) jointly exercised meaningful control over the work performed by Plaintiffs and class members;

(b) jointly exercised meaningful control over Plaintiffs' and class members' wages, hours, and working conditions, including the quantity, quality standards, speed, scheduling, and operative details of the tasks performed by Plaintiffs and class members;

(c) jointly required that Plaintiffs and class members perform work which is an integral part of Defendants' businesses; and

(d) jointly exercised control over Plaintiffs and class members as a matter of economic reality in that Plaintiffs and class members were dependent on Defendants, who shared the power to set the wages of Plaintiffs and class members and determined their working conditions, and who jointly reaped the benefits from the underpayment of their wages and noncompliance with other statutory provisions governing their

employment.

18. Plaintiffs are informed and believe, and thereon allege, that at all relevant times there has existed a unity of interest and ownership between Defendants such that any individuality and separateness between the entities has ceased.

19. UPS SUPPLY CHAIN SOLUTIONS, INC.; UPS SUPPLY CHAIN SOLUTIONS GENERAL SERVICES, INC.; and DOES 1 through 10 are therefore alter egos of each other.

20. Adherence to the fiction of the separate existence of Defendants would permit an abuse of the corporate privilege and would promote injustice by protecting Defendants from liability for the wrongful acts committed by them the name UPSSCS.

21. Plaintiffs further allege, upon information and belief, that Defendants UPS SUPPLY CHAIN SOLUTIONS, INC. and UPS SUPPLY CHAIN SOLUTIONS GENERAL SERVICES, INC.are alter egos of each other for the following reasons:

(a) On the California Secretary of State's website ((https://bizfileonline.sos.ca.gov/), UPS SUPPLY CHAIN SOLUTIONS, INC. and UPS SUPPLY CHAIN SOLUTIONS GENERAL SERVICES, INC. share the same Agent for Service of Process, CSC - LAWYERS INCORPORATING SERVICE;

(b) Based on the Statement of Information forms filed with the California Secretary of State, UPS SUPPLY CHAIN SOLUTIONS, INC. and UPS SUPPLY CHAIN SOLUTIONS GENERAL SERVICES, INC. share the same officers and/or directors, including, but not limited to, Brian Michael Dykes, who serves as Chief Financial Officer, and Norman M. Brothers Jr., who serves as Secretary; and

(c) On information and belief, UPS SUPPLY CHAIN SOLUTIONS, INC. and UPS SUPPLY CHAIN SOLUTIONS GENERAL SERVICES, INC. utilize the same standardized employment forms and issue the same employment policies.

## GENERAL ALLEGATIONS

22. Defendants are a division of United Parcel Service that specialize in providing comprehensive logistics and supply chain management services. Upon information and belief, Defendants maintain a single, centralized Human Resources ("HR") department at their corporate headquarters in Alpharetta, Georgia, or Atlanta, Georgia, which is responsible for the recruiting and hiring of new employees, and communicating and implementing Defendants' company-wide policies, including timekeeping policies and meal and rest period policies, to employees throughout California.

23. In particular, Plaintiffs and class members, on information and belief, received the same standardized documents and/or written policies. Upon information and belief, the usage of standardized documents and/or written policies, including new-hire documents, indicate that Defendants dictated policies at the corporate level and implemented them company-wide, regardless of their employees' assigned locations or positions.

24. Upon information and belief, Defendants maintain a centralized Payroll department at their corporate headquarters in Alpharetta, Georgia, or Atlanta, Georgia, which processes payroll for all non-exempt, hourly paid employees working for Defendants at their various locations in California, including Plaintiffs and class members. Based upon information and belief, Defendants issue the same formatted wage statements to all non-exempt, hourly paid employees in California, irrespective of their work locations. Upon information and belief, Defendants process payroll for departing employees in the same manner throughout the State of California, regardless of the manner in which each employee's employment ends.

25. Defendants continue to employ non-exempt or hourly paid employees in California.

26. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, Defendants were advised by skilled lawyers and other professionals, employees and advisors knowledgeable about California labor and wage law, employment and personnel practices, and about the requirements of California law.

27. Plaintiffs are informed and believe, and thereon allege, that Plaintiffs and class members were not paid for all hours worked because all hours worked were not recorded.

28. Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to receive certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation.

29. Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for work that was required to be done off-the-clock. In violation of the California Labor Code, Plaintiffs and class members were not paid at least minimum wages for work done off-the-clock.

30. Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to meal periods in accordance with the California Labor Code and applicable Industrial Welfare Commission ("IWC") Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided with timely, uninterrupted, thirty (30) minute meal periods and that Plaintiffs and class members were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period.

31. Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to rest periods in accordance with the California Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period and that Plaintiffs and class members were not authorized and permitted to take compliant rest periods or provided with payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.

32. Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to timely payment of all wages earned upon termination of employment. In violation of the California Labor Code, Plaintiffs and class members did not receive payment of all wages due, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, within permissible time periods.

33. Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to timely payment of wages during their employment. In violation of the California Labor Code, Plaintiffs and class members did not receive payment of all wages, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, within permissible time periods.

34. Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to receive full reimbursement for all business-related expenses and costs they incurred during the course and scope of their employment and that they did not receive full reimbursement of applicable business-related expenses and costs incurred.

35. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, Defendants knew or should have known that they had a duty to compensate Plaintiffs and class members for all hours worked, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and falsely represented to Plaintiffs and class members that they were properly denied wages, all in order to increase Defendants' profits.

**CLASS ACTION ALLEGATIONS**

36. Plaintiff brings this action on their own behalf, as well as on behalf of each and all other persons similarly situated, and thus seeks class certification under Rule 23 of the Federal Rules of Civil Procedure.

37. All claims alleged herein arise under California law for which Plaintiffs seek

relief authorized by California law.

38. Plaintiffs' proposed class consists of and is defined as follows:

> All persons who worked for Defendants as non-exempt, hourly paid employees in California, at any time from August 2, 2021, until the date of trial ("Class").

39. Members of the Class are referred to herein as "class members."

40. Plaintiffs reserve the right to redefine the Class and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

41. This action is brought and properly may be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2), or (b)(3) and satisfies the requirements thereof.

42. The membership of the entire Class is unknown to Plaintiffs at this time; however, the Class is estimated to be greater than one hundred (100) individuals who worked for Defendants across California during the relevant period. Thus, it is reasonable to presume that the members of the class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

43. Plaintiffs' claims are typical of those of the class members, because Plaintiffs suffered the violations set forth in this Consolidated Complaint.

44. Plaintiffs will adequately protect the interests of class members. Plaintiffs have no interests that are adverse to or conflict with class members and are committed to the vigorous prosecution of this action. To that end, Plaintiffs have retained counsel who are competent and experienced in handling class actions on behalf of employees.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the amount suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this case as a class action.

46. There are common questions of law and fact as to class members that predominate over questions affecting only individual members, including, but not limited to:

(a) Whether Defendants required Plaintiffs and class members to work over eight (8) hours per day, over twelve (12) hours per day, or over forty (40) hours per week and failed to pay all legally required overtime compensation to Plaintiffs and class members;

(b) Whether Defendants failed to pay Plaintiffs and class members at least minimum wages for all hours worked;

(c) Whether Defendants failed to provide Plaintiffs and class members meal periods;

(d) Whether Defendants failed to authorize and permit Plaintiffs and class members to take rest periods;

(e) Whether Defendants failed to pay earned overtime wages, minimum wages, and/or meal and rest period premiums due to Plaintiffs and class members upon their discharge;

(f) Whether Defendants failed to timely pay overtime wages, minimum wages, and/or meal and rest period premiums to Plaintiffs and class members during their employment;

(g) Whether Defendants failed to reimburse Plaintiffs and class members for necessary and required business-related expenditures and/or losses incurred by them in the scope of their employment;

(h) Whether Defendants engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*;

(i) The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law; and

(j) Whether Defendants failed to provide class members with accurate written wage statements as a result of providing them with written wage

statements with inaccurate entries for, among other things, amounts of gross and net wages, and total hours worked.

**FIRST CAUSE OF ACTION**

**Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime**

**(Against all Defendants)**

47. Plaintiffs incorporate by reference and re-alleges as if fully stated herein each and every allegation set forth above.

48. Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable IWC Wage Order. California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

49. California Labor Code section 1198 and the applicable IWC Wage Order provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

50. Specifically, the applicable IWC Wage Order provides that Defendants are and were required to pay Plaintiffs and class members working more than eight (8) hours in a day or more than forty (40) hours in a workweek, at the rate of time and one-half (1 ½) for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.

51. The applicable IWC Wage Order further provides that Defendants are and were required to pay Plaintiffs and class members working more than twelve (12) hours in a day, overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

52. California Labor Code section 510 codifies the right to overtime compensation at one and one-half (1 ½) times the regular rate of pay for hours worked in excess of eight (8)

hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh (7th) day of work, and to overtime compensation at twice the employee's regular rate of pay for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh (7th) day of work.

53. During the relevant time period, Defendants willfully failed to pay all overtime wages owed to Plaintiffs and class members. During the relevant time period, Plaintiffs and class members were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours worked were not recorded.

54. First, during the relevant period, Defendants implemented, on a company-wide basis, an employer-imposed requirement that Plaintiffs and class members undergo mandatory COVID-19 temperature checks and/or health screenings before clocking in for their scheduled shifts. California enacted emergency COVID 19 Prevention Regulations around March 2020 through February 3, 2025. (See 8 CCR sections 3205, 3205.1, 3205.2, and 3205.3)

55. Prior to his shift, for example, Plaintiff Bautista and class members were required to report their temperatures before being permitted to clock-in for their shifts. Since most employees were scheduled in groups for their start times and there were only two entrances with one infrared thermometer at each entrance, Plaintiff Bautista and class members had to line up to check their temperatures. After checking their temperatures, Plaintiff Bautista and class members were then then required to scan a QR code which linked to an app / website where they reported that they were cleared to work. Unlocking personal cell phones and/or starting laptops, scanning the QR code, waiting for the app / website to load, completing the form, and waiting for confirmation took time. This entire process took up to 5 minutes to complete before each shift and before Plaintiff Bautista and other class members could clock-in.

56. Even though Defendants required these health screenings, Defendants did not provide Plaintiff Bautista and class members a mechanism to record this time worked so they could be compensated for the time spent undergoing mandatory temperature checks and/or

health screenings.

57. Second, Defendants had, and continue to have, a company-wide policy and/or practice of strictly staffing their facilities based on the labor hours allocated by each location's labor or payroll budget set by the corporate office. Defendants' uniform use of labor budgeting resulted in chronic understaffing, such that there were too few employees on duty to handle the heavy workload and provide meal period coverage.

58. As an example, employees assigned to filling customer orders were required to complete 93 tickets per hour based on the labor or payroll budget set by the corporate office. During a standard 8-hour shift that meant completing one ticket every 45 seconds. Each ticket consisted of an item and a corresponding quantity for that item. It could be one small item such as a screw, or ten large items like motorcycle tires. The items were also scattered throughout the warehouse on racks or on pallets. Regardless of whether the employee was filling a ticket with ten motorcycle tires on pallets stacked to the roof or one small screw on the first level of the storage rack, the employee had 45 seconds to complete the ticket, even though most tickets required several minutes to locate the item, safely remove the item from its location, and transport the collected item(s) to the drop-off point. If the employee failed to meet the productivity requirements, they were disciplined, up to and including termination. As a result, employees were pressured to complete work off-the-clock to meet productivity requirements in addition to remaining within work time limits, because Defendants staffed insufficient employees to meet productivity requirements in the time scheduled.

59. At the end of the workday, employees would clock out, then set the alarm, turn off the lights, and lock the door before leaving, which could take between 3 and 10 minutes each workday but was not included in the time records.

60. Defendants also had a practice of failing to adhere to a schedule for meal periods which, in conjunction with the assignment of heavy workloads, further caused Plaintiffs and class members to not be relieved of their duties for compliant meal periods. As a result of this lack of meal period coverage, Plaintiffs and class members were not always afforded uninterrupted 30-minute meal periods during shifts when they were entitled to

receive a meal period.

61. For example, Plaintiff Bautista's meal periods were interrupted and/or cut short to assist other employees. Additionally, Defendants had a company-wide practice and/or policy of requiring that Plaintiffs and class members respond to work-related requests from Defendants' management and co-workers on their company-issued mobile devices and/or personal mobile devices at all times, including during meal periods. Thus, Plaintiffs and class members worked through meal periods and/or had them interrupted to handle their assigned workloads and responsibilities, and Defendants did not pay Plaintiffs and class members for the time they continued to perform tasks during meal periods.

62. Third, on information and belief, because Defendants frowned upon employees accruing meal period premiums, Defendants' management pressured Plaintiffs and class members to clock out for meal periods to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not. For example, when Plaintiff Bautista did record a meal break, 87.9% of his meal breaks were exactly 30 minutes and 9.2% of his meal breaks were exactly 45 minutes, indicating rounding. Thus, Defendants did not record all hours worked during meal periods, and Plaintiffs and class members performed work during meal periods for which they were not paid.

63. Defendants also failed to require Plaintiffs and class members to contemporaneously record their work hours. Instead, Plaintiff Bautista and class members were expected to manually enter their work hours. Plaintiff Bautista and most class members manually entered their hours at the end of their shift which resulted in inaccurate records, underreporting of work hours, and underreporting of meal and rest break violations. For example, Plaintiff Bautista's timecards showed that he manually entered the same time data:

From June 2021:

Start Time: 9:00 a.m.
Clock-out: 11:00 a.m.
Clock-in: 11.15 a.m.
Meal Break: 1:45 p.m. (Automatic 30-minutes)
Clock-out: 3:45 p.m.
Clock-in: 4:00 p.m.
End Time: Between 7:00 and 10:00 p.m.

Regular Hours: 8 hours
Overtime Hours: .5 to 2 hours
Estimated Unpaid Overtime Hours: 1 to 3 hours

From March 2022:

Start Time: 5:00 a.m.
Clock-out: 7:00 a.m.
Clock-in: 7.15 a.m.
Meal Break: 9:45 a.m. (Automatic 30-minutes)
Clock-out: 11:45 a.m.
Clock-in: 12:00 p.m.
End Time: Between 5:00 and 7:00 p.m.

Regular Hours: 8 hours
Overtime Hours: 1 to 4 hours
Estimated Unpaid Overtime Hours: 1 to 3 hours

From June 2022 to December 2023:

Start Time: 10:00 a.m.
Clock-out: 12:00 a.m.
Clock-in: 12.15 a.m.
Meal Break: 2:45 p.m. (Automatic 30-minutes)
Clock-out: 4:45 p.m.
Clock-in: 5:00 p.m.
End Time: Between 7:00 and 10:00 p.m.
Regular Hours: 8 hours
Overtime Hours: 1 to 3 hours
Estimated Unpaid Overtime Hours: 1 to 3 hours

Plaintiff Bautista's general practice for almost half a decade was to manually enter a 15-minute break 2 hours from his manually entered start time, then manually enter a meal break 4.75 hours from his manually entered start time, and then a 15-minute break 6.75 hours from his manually entered start time. Because Plaintiff Bautista, on a regular basis, actually began working approximately 5-10 minutes prior to these uniform start times, and continued to work some time after these uniform stop times, Plaintiff Bautista worked off-the-clock and was denied compensation due to Defendants' practice of non-contemporaneous timekeeping.

64. From June 2021 through December 2023, Plaintiff Bautista was not paid overtime if he worked more than 8 hours per day, as required under California law, for time spent performing services for Defendants before clocking in, while clocked out for meal breaks, and after clocking out. As an example, from July 17, 2022 through July 23, 2022,

Plaintiff Bautista accrued 51.82 hours or 40 hours of regular time and 11.82 hours of overtime, but due to the off-the-clock work performed by Plaintiff Bautista before clocking in, during meal breaks, and after clocking out, this resulted in an undercount of his actual work hours for this pay period and an underpayment of his overtime wages (e.g., temperature checks before clocking in)

65. Defendants knew or should have known that as a result of these company-wide practices and/or policies, Plaintiffs and class members were performing their assigned duties off-the-clock before their shifts and during meal periods, and were suffered or permitted to perform work for which they were not paid. Because Plaintiffs and class members worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Plaintiffs and class members were not paid overtime wages for all of the overtime hours they actually worked.

66. Defendants' failure to pay Plaintiffs and class members the balance of overtime compensation as required by California law, violates the provisions of California Labor Code sections 510 and 1198. Pursuant to California Labor Code section 1194, Plaintiffs and class members are entitled to recover from Defendants their unpaid overtime compensation, as well as interest, costs, and attorneys' fees.

**SECOND CAUSE OF ACTION**

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid Minimum Wages**

**(Against all Defendants)**

67. Plaintiffs incorporate by reference and re-alleges as if fully stated herein each and every allegation set forth above.

68. At all relevant times, California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful. Compensable work time is defined in IWC Wage Order No. 9-2001 as "the time during which an employee is subject to the control of an employer, and includes all the

time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code Regs. Tit. 8, § 11090(2)(H) (defining "Hours Worked").

69. First, as stated above, due to Defendants' mandated pre-shift COVID-19 temperature checks and/or health screenings, Plaintiff Bautista and class members performed work off-the-clock before their scheduled shifts, because Defendants failed to provide Plaintiff Bautista and class members with any mechanism to record the time they spent completing the mandated health screenings.

70. Second, as set forth above, due to Defendants' policies and/or practices of utilizing labor budgets and/or limited payroll allocation, understaffing their facilities, assigning heavy workloads, and failing to adhere to a schedule for meal periods, Plaintiffs and class members were impeded from taking all uninterrupted meal periods to which they were entitled and were required to work off-the-clock during meal periods, time for which they were not paid. Moreover, as also stated, Defendants had a company-wide policy and/or practice of requiring that Plaintiffs and class members respond to work-related requests on their company-issued mobile devices and/or personal mobile devices at all times, including during unpaid meal periods. Further, to limit the meal period premiums that Defendants would otherwise owe, Defendants pressured Plaintiffs and class members to clock out for meal periods to reflect compliant meal periods, but required them to continue working, time for which they were not paid.

71. Plaintiff Bautista's timecards show he worked less than 8 hours per day but was not paid for time spent working off-the-clock as alleged above on the following dates:

October 6, 2021: 3.5 hours

December 23, 2022: 7.82 hours

January 5, 2023: 7.28 hours

April 20, 2023: 7.80 hours

May 3, 2023: 7.72 hours

May 25, 2023: 3 hours

August 15, 2023: 7.92 hours

September 8, 2023: 5.75 hours

72. Plaintiff Bautista was not paid minimum wages for the time he spent working off-the-clock as described above during the above dates.

73. Plaintiff Bautista's timecards show he worked less than 40 regular hours per workweek during the following pay periods but was not paid for time spent working off-the-clock as described above for the following workweeks:

| **Pay Period End Date** | **Shifts** | **Total Hours** |
|---|---|---|
| 10/9/2021 | 4 | 37.12 |
| 11/13/2021 | 4 | 39.53 |
| 11/27/2021 | 3 | 30.65 |
| 12/25/2021 | 3 | 29.57 |
| 1/1/2022 | 4 | 39.63 |
| 1/22/2022 | 3 | 30.24 |
| 6/18/2022 | 3 | 38.02 |
| 8/6/2022 | 4 | 39.81 |
| 8/27/2022 | 1 | 16.00 |
| 10/22/2022 | 3 | 30.66 |
| 11/19/2022 | 4 | 34.99 |
| 11/26/2022 | 3 | 25.34 |
| 12/31/2022 | 3 | 25.56 |
| 1/7/2023 | 4 | 34.62 |
| 1/14/2023 | 4 | 36.44 |
| 2/18/2023 | 4 | 34.54 |
| 2/25/2023 | 4 | 35.14 |
| 3/11/2023 | 4 | 34.51 |

| | | |
|---|---|---|
| 3/25/2023 | 4 | 34.29 |
| 4/15/2023 | 4 | 34.27 |
| 5/13/2023 | 3 | 27.99 |
| 6/3/2023 | 4 | 36.58 |
| 7/8/2023 | 3 | 27.86 |
| 8/26/2023 | 4 | 35.94 |
| 9/9/2023 | 4 | 33.25 |
| 10/7/2023 | 4 | 34.78 |
| 10/28/2023 | 3 | 27.42 |
| 11/18/2023 | 4 | 35.84 |

74. Plaintiff Bautista was not paid minimum wages for the time he spent working off-the-clock as described above during the above workweeks.

75. Defendants did not pay minimum wages for all hours worked by Plaintiffs and class members. To the extent that these off-the-clock hours did not qualify for overtime premium payment, Defendants did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

76. Defendants' failure to pay Plaintiffs and class members minimum wages violates California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Pursuant to California Labor Code section 1194.2, Plaintiffs and class members are entitled to recover from Defendants liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

**THIRD CAUSE OF ACTION**

**Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198—Meal Period Violations**

**(Against all Defendants)**

77. Plaintiffs incorporate by reference and re-alleges as if fully stated herein each

and every allegation set forth above.

78. At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (2012).

79. At all relevant times herein set forth, California Labor Code sections 226.7, 512(a), 516, and 1198 provide that no employer shall require an employee to work during any meal period mandated by an applicable order of the IWC.

80. At all relevant times herein set forth, Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

81. First, during the relevant time period, as stated above, Defendants had, and continue to have, a company-wide policy and/or practice of understaffing their facilities due to labor budgeting and/or limited payroll allocation, which, combined with the assignment of heavy workloads, has resulted in a lack of meal period coverage and prevented Plaintiffs and class members from taking all timely, uninterrupted meal periods to which they were entitled. Further, as stated, Defendants had a company-wide practice and/or policy of failing to adhere to a schedule for meal periods, which further caused Plaintiffs and class members to not be relieved of their duties for compliant meal periods. Moreover, as stated, Defendants had a company-wide policy and/or practice of requiring that Plaintiffs and class members respond to work-related requests on their company-issued mobile devices and/or personal mobile devices at all times, including during meal periods.

82. As a result, Plaintiffs and class members had to work through all or part of their meal periods and/or had to wait extended periods of time before taking meal periods. For example, Plaintiff Bautista had his meal periods interrupted and/or cut short because he was required to assist other employees and/or answer phone calls from his supervisors and/or co-workers. Additionally, Plaintiff Bautista took his meal periods late, after the fifth hour of work, due to the lack of coverage and heavy workload. Plaintiff Bautista's time records showed an average shift length of 9.49 hours, but 1.5% of his shifts showed no first meal break, 8.6% of his meal breaks were taken after the fifth hour of work, and 33.5% of his shifts did not have a second meal break.

83. Thus, Defendants failed to provide Plaintiff Bautista and class members with compliant, 30-minute meal periods.

84. Second, as set forth above, because Defendants frowned upon employees accruing meal period premiums, Defendants' management pressured Plaintiffs and class members to clock out for meal periods to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not, in order to strictly limit the meal premiums that would need to be paid by Defendants.

85. Third, Plaintiffs and class members worked shifts in excess of ten (10) hours without receiving an uninterrupted second 30-minute meal period. For example, during his employment, Plaintiff Bautista worked shifts in excess of ten (10) or more hours per day, but was not provided a second 30-minute meal period.

86. Plaintiffs and class members did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties. Assuming Plaintiff did not waive meal periods in any shift, Plaintiff Bautista's time records show a 39% violation rate of shifts in which a meal period was required but no meal was recorded, a late meal was recorded, and/or a short meal was recorded. Assuming Plaintiff Bautista validly waived his meal periods in every applicable shift, Plaintiff Bautista's time records still show a 13% violation rate of shifts in which a meal period was required but no meal was recorded, a late meal was recorded, and/or a short meal was recorded (non-exhaustive list of examples):

Missed First Meal Breaks: April 22, 2022, January 13, 2023, and September 28, 2023

Late Meal Break: March 7, 2022

Missed Second Meal Breaks: September 7, 2021, November 29, 2021, March 31, 2022, and September 6, 2022

87. At all times herein mentioned, Defendants knew or should have known that, as a result of these policies, Plaintiffs and class members were prevented from being relieved of all duties and were required to perform some of their assigned duties during meal periods. Defendants further knew or should have known that Defendants did not pay Plaintiffs and class members all meal period premiums when meal periods were late, missed, shortened, or interrupted.

88. Furthermore, Defendants engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods were not provided. Because of this practice and/or policy, Plaintiffs and class members have not received premium pay for all missed, late, and interrupted meal periods. As a result, Defendants failed to provide Plaintiffs and class members compliant meal periods in violation of California Labor Code sections 226.7, 512(a), and 516 and failed to pay the full meal period premiums due.

89. Defendants' conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), 516, and 1198. Plaintiffs and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided.

**FOURTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226.7, 516, and 1198—Rest Period Violations**

**(Against all Defendants)**

90. Plaintiffs incorporate by reference and re-alleges as if fully stated herein each and every allegation set forth above.

91. At all relevant times herein set forth, the applicable IWC Wage Order and

California Labor Code sections 226.7, 516, and 1198 were applicable to Plaintiffs' and class members' employment by Defendants.

92. At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

93. At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 273 (2016). Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(c), Plaintiffs and class members are entitled to recover from Defendants one (1) additional hour of pay at their regular rates of pay for each work day that a required rest period was not authorized and permitted.

94. During the relevant time period, Defendants regularly failed to authorize and permit Plaintiffs and class members to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof. As with meal periods, Defendants' company-wide practices of labor budgeting and/or limited payroll allocation, understaffing, and assigning heavy workloads, resulted in a lack of rest period coverage and prevented Plaintiffs and class members from being relieved of all duty in order to take compliant rest periods. Defendants also failed to adhere to a schedule for rest periods, which, coupled with Defendants' failure to provide adequate rest period coverage, further led to Plaintiffs and class members not being authorized and permitted to take rest periods. In addition, as with meal

periods, Defendants' company-wide practice of requiring that Plaintiffs and class members carry company-issued mobile devices and/or personal mobile devices at all times to respond to questions and requests prevented Plaintiffs and class members from being able to take rest periods.

95. Furthermore, around 2021, Defendants maintained and implemented a company-wide on-premises rest period policy to comply with their insurance policies, which mandated that Plaintiff Bautista and class members remain on the work premises during their rest periods. Because Plaintiff Bautista and class members were restricted from leaving the premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes, such as running personal errands. Thus, Defendants effectively maintained control over Plaintiffs and class members during rest periods—every purported rest period.

96. As a result of Defendants' practices and policies, Plaintiffs and class members worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted 10-minute rest periods to which they were entitled. For example, Plaintiff Bautista had his rest periods interrupted due to the heavy workload and lack of coverage.

97. Beginning around 2022, due to an incident involving an employee being injured while on a rest break off premises, Defendants enacted a policy which prohibited employees from leaving the premises during rest breaks. Accordingly, when working conditions permitted Plaintiff Bautista to take a rest break, he always took his break either in the break room or in the adjacent company parking lot.

98. During a typical work week, Plaintiff Bautista was not permitted two to three duty-free rest breaks as they were interrupted / cut short due to understaffing and being overworked, as described above.

99. Defendants have also engaged in a systematic, company-wide practice and/or policy of not paying rest period premiums owed when rest periods are not authorized and permitted. Because of this practice and/or policy, Plaintiffs and class members have not

received premium pay for all missed rest periods.

100. Defendants' conduct violates the applicable IWC Wage Order and California Labor Code sections 226.7, 516, and 1198. Plaintiffs and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that a compliant rest period was not authorized and permitted.

**FIFTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 201 and 202—Wages Not Timely Paid Upon Termination**

**(Against all Defendants)**

101. Plaintiffs incorporate by reference and re-alleges as if fully stated herein each and every allegation set forth above.

102. This cause of action is dependent upon, and wholly derivative of, the overtime wages, minimum wages, and/or meal and rest period premiums that were not timely paid to Plaintiffs and those class members no longer employed by Defendants upon their termination.

103. At all times relevant herein set forth, Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

104. Defendants willfully failed to pay Plaintiffs and class members who are no longer employed by Defendants the earned and unpaid wages set forth above, including but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

105. Defendants' failure to pay Plaintiffs and class members who are no longer

employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, violates Labor Code sections 201 and 202. Plaintiffs and class members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203.

**SIXTH CAUSE OF ACTION**

**Violation of California Labor Code § 2802—Unpaid Business-Related Expenses**

**(Against all Defendants)**

106. Plaintiffs incorporate by reference and re-alleges as if fully stated herein each and every allegation set forth above.

107. At all times herein set forth, California Labor Code section 2802 provides that an employer must reimburse employees for all necessary expenditures and losses incurred by the employee in the performance of his or her job. The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014). The applicable wage order, IWC Wage Order No. 9-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

108. During the relevant time period, Defendants, on a company-wide basis, required that Plaintiffs and class members use their own personal mobile devices, including, but not limited to, cellular phones, and/or mobile data to carry out their job duties but failed to reimburse them for the costs of their work-related mobile device expenses. For example, Plaintiffs and class members would be contacted on their personal mobile devices by their supervisors and/or other employees to discuss work-related matters, such as staffing, production, and safety issues. Although Defendants required Plaintiffs and class members to

utilize their personal mobile devices and/or mobile data to carry out their work-related responsibilities, Defendants failed to reimburse them for this cost.

In addition, Defendants required Plaintiff Bautista and class members to use their personal mobile devices to scan a QR-Code which linked to a website Defendants used for class members to report their COVID-19 temperature results for each shift. Accordingly, Defendants were aware that they were making the use of personal cell phone devices a necessity of the work.

109. Defendants could have provided Plaintiffs and class members with the actual equipment for use on the job, such as company mobile devices, or Defendants could have reimbursed employees for the costs of their mobile device usage. Instead, Defendants passed these operating costs onto Plaintiffs and class members. At all relevant times, Plaintiff did not earn at least two (2) times the minimum wage.

110. Defendants' company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred and passing on their operating costs to Plaintiffs and class members violates California Labor Code section 2802. Defendants have intentionally and willfully failed to reimburse Plaintiffs and class members for necessary business-related expenses and costs.

111. Pursuant to California Labor Code section 2802, Plaintiffs and class members are entitled to recover from Defendants their business-related expenses incurred during the course and scope of their employment, plus interest, costs, and attorneys' fees.

**SEVENTH CAUSE OF ACTION**

**Violation of California Business & Professions Code §§ 17200, *et seq.* –**

**Unlawful Business Practices**

**(Against all Defendants)**

112. Plaintiffs incorporate by reference and re-alleges as if fully stated herein each and every allegation set forth above.

113. Defendants are "persons" as defined by California Business & Professions Code section 17201, as they are corporations, firms, partnerships, joint stock companies,

and/or associations.

114. Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful and harmful to Plaintiff, class members, and to the general public. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unlawful business practices. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

115. Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code sections 17200, *et seq*.

116. A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on the violation of any state or federal law. In the instant case, Defendants' policies and practices have violated state law in at least the following respects:

(a) Requiring non-exempt, hourly paid employees, including Plaintiffs and class members, to work overtime without paying them proper compensation in violation of California Labor Code sections 510 and 1198, and the applicable IWC Wage Order, as alleged herein;

(b) Failing to pay at least minimum wage to Plaintiffs and class members in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order, as alleged herein;

(c) Failing to provide all meal periods to Plaintiffs and class members in violation of California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order, as alleged herein;

(d) Failing to authorize and permit Plaintiffs and class members to take all rest periods in violation of California Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order, as alleged herein;

(e) Failing timely to pay all earned wages to Plaintiffs and class members in violation of California Labor Code section 204, as alleged herein;

(f) Failing to provide accurate wage statements; and

(g) Failing to reimburse Plaintiffs and class members for all business expenses necessarily incurred in violation of California Labor Code section 2802, as alleged herein.

117. As a result of the violations of California law herein described, Defendants unlawfully gained an unfair advantage over other businesses. Plaintiffs and class members have suffered pecuniary loss by Defendants' unlawful business acts and practices alleged herein.

118. Pursuant to California Business & Professions Code sections 17200, *et seq.*, Plaintiffs and class members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of the initial complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiffs and class members; and an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

**EIGHTH CAUSE OF ACTION**

**Violation of California Business & Professions Code §§ 17200, *et seq.* –**

**Unfair Business Practices**

**(Against all Defendants)**

119. Plaintiffs incorporate by reference and re-alleges as if fully stated herein each and every allegation set forth above.

120. Defendants are "persons" as defined by California Business & Professions Code section 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

121. Defendants' conduct, as alleged herein, has been, and continues to be, unfair, and harmful to Plaintiff, class members, and to the general public. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unfair business practices. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

122. Defendants' activities, namely Defendants' company-wide practice and/or policy of not paying Plaintiffs and class members all meal and rest period premiums due to them under Labor Code section 226.7, deprived Plaintiffs and class members of the compensation guarantee and enhanced enforcement implemented by section 226.7. The statutory remedy provided by section 226.7 is a "'dual-purpose' remedy intended primarily to compensate employees, and secondarily to shape employer conduct." *Safeway, Inc. v. Superior Court*, 238 Cal. App. 4th 1138, 1149 (2015). The statutory benefits of section 226.7 were guaranteed to Plaintiffs and class members as part of their employment with Defendants, and thus Defendants' practice and/or policy of denying these statutory benefits constitutes an unfair business practice in violation of California Business & Professions Code sections 17200, *et seq*. (*Id.*)

123. A violation of California Business & Professions Code sections 17200, et seq. may be predicated on any unfair business practice. In the instant case, Defendants' policies and practices have violated state law in at least the following respects:

(a) Requiring non-exempt, hourly paid employees, including Plaintiffs and class members, to work overtime without paying them proper compensation in violation of California Labor Code sections 510 and 1198, and the applicable IWC Wage Order, as alleged herein;

(b) Failing to pay at least minimum wage to Plaintiffs and class members in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order, as alleged herein;

(c) Failing to provide uninterrupted meal periods to Plaintiffs and class members in violation of California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order, as alleged herein;

(d) Failing to authorize and permit Plaintiffs and class members to take uninterrupted rest periods in violation of California Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order, as alleged herein;

(e) Failing to provide Plaintiffs and class members with accurate wage statements and

failing to maintain accurate payroll records in violation of California Labor Code sections 226(a), 1174(d), and 1198, and the applicable IWC Wage Order, as alleged herein;

(f) Failing timely to pay all earned wages to Plaintiffs and class members in violation of California Labor Code section 204, as alleged herein;

(g) Failing to provide accurate wage statements;

(h) Failing to pay Plaintiffs and class members the costs of mandatory medical or physical examinations in violation of California Labor Code section 222.5, as set forth below; and

(i) Failing to reimburse Plaintiffs and class members for all business expenses necessarily incurred in violation of California Labor Code sections 2802, as alleged herein.

124. At all relevant times herein, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any medical or physical examination taken. Defendants' mandated pre-shift COVID-19 temperature checks and/or health screenings, Plaintiffs and class members performed work off-the-clock before their scheduled shifts, because Defendants failed to provide Plaintiffs and class members with any mechanism to record the time they spent completing the mandated health screenings.

125. Plaintiffs lack an adequate remedy at law for the violations of California law herein described.

126. Pursuant to California Business & Professions Code sections 17200, *et seq.*, Plaintiffs and class members are entitled to restitution for the class-wide loss of the statutory benefits implemented by section 226.7 withheld and retained by Defendants during a period that commences four years prior to the filing of the initial complaint; a permanent injunction requiring Defendants to pay all statutory benefits implemented by section 226.7 due to Plaintiffs and class members; an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

//

**NINTH CAUSE OF ACTION**

**Violation of Labor Code § 226(a) – Failure to Provide Accurate Written Wage Statements**

**(Against all Defendants)**

127. Plaintiffs incorporate by reference and re-alleges as if fully stated herein each and every allegation set forth above.

128. Labor Code section 226(a) states:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to their employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of their social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, "copy" includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision.

129. The Division of Labor Standards Enforcement ("DLSE") has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements so long as each employee retains the right to elect to receive a written paper stub or record and that those who are provided with electronic wage statements retain the ability to easily access

the information and convert the electronic statements into hard copies at no expense to the employee. (DLSE Opinion Letter July 6, 2006).

130. Plaintiffs are informed and believe that, at all relevant times during the applicable limitations period, Defendants have failed to provide Plaintiffs and class members with written wage statements as described above. Additionally, the wage statements issued to class members failed to account for the unpaid minimum wages, overtime, and premium pay wages described above.

131. Furthermore, Defendants failed to provide Plaintiffs and class Members with paper pay stubs as required by Labor Code § 226, applicable Wage Orders, and DLSE Opinion Letters. Plaintiffs' and class members' wage statements were only provided in electronic format in Violation of Labor Code § 226.

132. Defendants failed to comply With Labor Code section 226(a)(8) as the wage statements issued to Plaintiffs and class Members failed to state "the name and address of the legal entity that is the employer."

133. Plaintiffs are informed and believe that Defendants' failure to provide Plaintiffs and class members with accurate written wage statements was intentional in that Defendants have the ability to provide them with accurate wage statements but have intentionally provided them with written wage statements that Defendants have known do not comply with Labor Code section 226(a).

134. Plaintiffs and class members have suffered injuries, in that Defendants have violated their legal rights to receive accurate wage statements and have misled them about their actual rates of pay and wages earned. In addition, inaccurate information on their wage statements has prevented immediate challenges to Defendants' unlawful pay practices, has required discovery and mathematical computations to determine the amount of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records, and/or has led to the submission of inaccurate information about wages and deductions to federal and state government agencies.

135. Pursuant to Labor Code section 226(a), Plaintiffs, on behalf of themselves and

class members, seek the greater of actual damages or $50.00 for the initial pay period in which a violation of Labor Code section 226(a) occurred, and $ 100.00 for each subsequent pay period in which a violation of Labor Code section 226(a) occurred, not to exceed an aggregate penalty of $4,000.00 per class member, as well as awards of reasonable attorneys' fees and costs.

**TENTH CAUSE OF ACTION**

**Civil Penalties under Labor Code §§ 2698, et seq.**

**(Against all Defendants)**

136. Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

137. During the applicable limitations period, Defendants have violated Labor Code §§ 201, 202, 203, 204, 210, 212, 213, 226, 226.3, 226.7, 226.8, 227.3, 246, 510, 512, 515, 558, 558.1, 1174, 1174.5, 1182.12, 1185, 1194, 1194.2, 1197, 1198, 1199, 2698, 2699, *et seq.*, and 2802.[1]

138. Labor Code §§ 2699(a) and (g) authorize an aggrieved employee, on behalf of **Error! Reference source not found.** and other current and former employees, to bring a representative civil action to recover civil penalties pursuant to the procedures set forth in Labor Code § 2699.3 that may, but need not, be brought or maintained as a class action pursuant to Code of Civil Procedure section 382.

139. Plaintiff, a former employee against whom Defendants committed one or more of the alleged Labor Code violations during the applicable limitations period, is an aggrieved employee within the meaning of Labor Code § 2699(c). Plaintiff was employed by Defendants as a non-exempt hourly employee in California. Aggrieved Employees include all non-exempt hourly employees of Defendants within the state of California from one year prior to the date of this letter and continuing through the present (Plaintiff and Aggrieved Employees are collectively referred to herein as "Aggrieved Employees")

[1] Plaintiff hereby reserves the right to seek penalties on behalf of all Aggrieved Employees, for Defendants' violations of the applicable provisions of the Labor Code, suffered by Aggrieved Employees, but not directly suffered by Plaintiff under *Huff v. Securitas Security Services USA, Inc*. (2018) 23 Cal.App.5th 745.

140. Plaintiff has complied with the procedures for bringing suit specified in Labor Code § 2699.3. Notice was provided to the California Labor & Workforce Development Agency ("LWDA") and 65 days have elapsed without the LWDA providing Plaintiff with any notice of an intent to investigate.

141. Pursuant to Labor Code sections 2699(a) and (f), Plaintiff seeks the following civil penalties for Defendants' violations of Labor Code §§ 201, 202, 203, 204, 212, 213, 223, 226.7, 226(a), 226.8, 227.3, 246, 510, 512, 1174, 1194, 1194.2, 1197, 1197.1, 1198, and 2802:

i. For violations of Labor Code §§ 201, 202, 203, 213, 212, 226.7, 227.3, 246 1174, 1194, 1198 and 2802, one hundred dollars ($100) for each employee per pay period for each initial violation and two hundred dollars ($200) for each employee per pay period for each subsequent violation (penalties set by Labor Code § 2699(f)(2));

ii. For violations of Labor Code § 203, a penalty in an amount not exceeding thirty (30) days' pay as waiting time (penalties set by Labor Code § 256);

iii. For violations of Labor Code § 204, one hundred dollars ($100) for each employee for each initial violation that was neither willful nor intentional, two hundred dollars ($200) for each employee, plus 25% of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and two hundred dollars ($200) for each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code § 210);

iv. For violations of Labor Code § 223, one hundred dollars ($100) for each employee for each initial violation that was neither willful nor intentional, two hundred dollars ($200) for each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and two hundred

dollars ($200) for each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code § 225.5);

v. For violations of Labor Code § 226(a), if this action is deemed to be an initial citation, two hundred and fifty dollars ($250) for each employee for each violation. Alternatively, if an initial citation or its equivalent occurred before the filing of this action, one thousand dollars ($1,000) for each employee for each violation (penalties set by Labor Code § 226.3);

vi. For violation of Labor Code §§ 510 and 512, fifty dollars ($50) for each employee for each initial pay period for which the employee was underpaid, and one hundred dollars ($100) for each employee for each subsequent pay period for which the employee was underpaid (penalties set by Labor Code § 558);

vii. For violations of Labor Code § 1197, one hundred dollars ($100) for each aggrieved employee for each initial violation of Labor Code § 1197 that was intentional and two hundred and fifty dollars ($250) for each aggrieved employee per pay period for each subsequent violation of Labor Code § 1197, regardless of whether the initial violation was intentional (penalties set by Labor Code § 1197.1);

viii. Pursuant to Labor Code § 2699(g), Plaintiff seeks an award of reasonable attorneys' fees and costs in connection with Plaintiff's claims for civil penalties.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

Plaintiff, on behalf of all others similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

1. For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs. Plaintiffs reserve the right to amend his prayer for relief to seek a different amount.

**Class Certification**

2. That this case be certified as a class action;

3. That Plaintiffs be appointed as the representatives of the Class;

4. That counsel for Plaintiffs be appointed as class counsel.

**As to the First Cause of Action**

5. That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 510 and 1198, and the applicable IWC Wage Order by willfully failing to pay all overtime wages due to Plaintiffs and class members;

6. For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

7. For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due, or as otherwise provided by law;

8. For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a); and

9. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Second Cause of Action**

10. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order by willfully failing to pay minimum wages to Plaintiffs and class members;

11. For general unpaid wages and such general and special damages as may be appropriate;

12. For pre-judgment interest on any unpaid compensation from the date such amounts were due, or as otherwise provided by law;

13. For reasonable attorneys' fees and for costs of suit incurred herein pursuant to

California Labor Code section 1194(a);

14. For liquidated damages pursuant to California Labor Code section 1194.2; and

15. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Third Cause of Action**

16. That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order by willfully failing to provide all meal periods to Plaintiffs and class members;

17. That the Court make an award to the Plaintiffs and class members of one (1) hour of pay at each employee's regular rate of pay for each workday that a meal period was not provided;

18. For all actual, consequential, and incidental losses and damages, according to proof;

19. For premiums pursuant to California Labor Code section 226.7(c);

20. For pre-judgment interest on any unpaid meal period premiums from the date such amounts were due, or as otherwise provided by law;

21. For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

22. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Fourth Cause of Action**

23. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order by willfully failing to authorize and permit Plaintiffs and class members to take all rest periods;

24. That the Court make an award to the Plaintiffs and class members of one (l) hour of pay at each employee's regular rate of pay for each workday that a rest period was not authorized and permitted;

25. For all actual, consequential, and incidental losses and damages, according to

proof;

26. For premiums pursuant to California Labor Code section 226.7(c);

27. For pre-judgment interest on any unpaid rest period premiums from the date such amounts were due, or as otherwise provided by law;

28. For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

29. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Fifth Cause of Action**

30. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 201 and 202 by willfully failing to pay overtime wages, minimum wages, and/or meal and rest period premiums owed at the time of termination of the employment of Plaintiff and other terminated class members;

31. For all actual, consequential and incidental losses and damages, according to proof;

32. For waiting time penalties according to proof pursuant to California Labor Code section 203 for all employees who have left Defendants' employ;

33. For pre-judgment interest on any unpaid wages from the date such amounts were due, or as otherwise provided by law;

34. For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

35. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Sixth Cause of Action**

36. That the Court declare, adjudge and decree that Defendants violated California Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-related expenses and costs incurred by Plaintiffs and class members;

37. For unpaid business-related expenses and such general and special damages as

may be appropriate;

38. For pre-judgment interest on any unpaid business-related expenses from the date such amounts were due pursuant to California Labor Code section 2802(b), or as otherwise provided by law;

39. For all actual, consequential, and incidental losses and damages, according to proof;

40. For attorneys' fees and costs pursuant to California Labor Code section 2802(c), or as otherwise provided by law; and

41. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Seventh Cause of Action**

42. That the Court declare, adjudge and decree that Defendants' conduct of failing to provide Plaintiffs and class members all overtime wages due to them, failing to provide Plaintiffs and class members all minimum wages due to them, failing to provide Plaintiffs and class members all meal periods, failing to authorize and permit Plaintiffs and class members to take all rest periods, failing to timely pay Plaintiffs and class members all earned wages during employment, and failing to reimburse Plaintiffs and class members for business-related expenses, constitutes an unlawful business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

43. For restitution of unpaid wages to Plaintiff and all class members and prejudgment interest from the day such amounts were due and payable;

44. For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

45. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5; and

46. For such other and further relief as the Court may deem equitable and

appropriate.

**As to the Eighth Cause of Action**

47. That the Court declare, adjudge and decree that Defendants' conduct of denying Plaintiffs and class members the statutory benefits guaranteed under section 226.7 constitutes an unfair business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

48. For restitution of the statutory benefits under section 226.7 unfairly withheld from Plaintiffs and class members and prejudgment interest from the day such amounts were due and payable;

49. For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

50. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5;

51. For pre-judgment and post-judgment interest as provided by law; and

52. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Ninth Cause of Action**

53. That the Court declare, adjudge and decree that Defendants violated the recordkeeping provisions of California Labor Code section 226(a) and the applicable IWC Wage Order as to Plaintiffs and Subclass members, and willfully failed to provide accurate itemized wage statements thereto;

54. For all actual, consequential, and incidental losses and damages, according to proof;

55. For injunctive relief pursuant to California Labor Code section 226(h);

56. For statutory penalties pursuant to California Labor Code section 226(e);

57. For attorneys' fees and costs pursuant to California Labor Code section

226(e)(1); and

58. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Tenth Cause of Action**

59. Penalties, attorneys' fees, and costs under Labor Code § 2699.

Dated: November 7, 2025

Respectfully submitted,

Capstone Law APC

By: 

Robert Drexler
Jonathan Lee
Robert Myong

Attorneys for Plaintiff Augustine Bautista

Dated: November 7, 2025

Respectfully submitted,

D.LAW, INC.

By: */s/ David Keledjian*

Emil Davtyan
David Yeremian
David Keledjian
Elizabeth Harrier

Attorneys for Plaintiff Robert E. Dickie